JOSEPH H. PAINTER *vs.* SAMUEL T. HOUSTON AND ROBERT PENDLETON.

1. The plaintiff's oath or affirmation is admissible, and is sufficient of itself to prove as well the facts constituting the fraud as the indebtedness, to obtain an order for a *capias ad respondendum* under the act abolishing imprisonment for debt in certain cases.

2. Counter affidavits to show no indebtedness, or to show a rectitude of dealing, and a total absence of any fraud on the part of defendant, or to contradict the facts as sworn to in the original affidavits, cannot be admitted. But the facts, as sworn to in the original affidavits, must be taken as true, and upon these, and these only, the question of discharge is to be determined.

3. Of indebtedness, *prima facie* evidence is sufficient, and false and deceitful representations, made by way of inducement to contract or surrender one's rights, sufficient evidence of fraud; but the intent to defraud must be clearly inferrible or positively proved.

Argued before Justices OGDEN, WHELPLEY, and CLAWSON, on motion to discharge on common bail.

*W. Halsted,* for defendants.

*T. H. Dudley,* for plaintiff.

The opinion of the court was delivered by

CLAWSON, J. In this case the affirmation of the plaintiff is particularly relied on for proof to obtain the order for the *capias ad respondendum,* although there is superadded the affidavit of a third person to certain facts, strengthening somewhat that of the plaintiff.

It is objected, in the *first* place, by defendants' counsel, with considerable earnestness and ingenuity, that the affirmation of the plaintiff is not sufficient, and cannot be received to prove the fraud; this he insists must be proved by some disinterested person, and that the proof to this point must be such as would be legally admissible in a court of law, and refers to the case of *McKernan* v. *McDonald,* 3 *Dutcher* 541, to sustain him in this position.

But upon a careful reading of that case, it will be seen that it does not sustain him—it does not decide that point, and has no reference to it. It merely distinguishes between the words *proof* and *affidavit*, as used in the act abolishing imprisonment for debt, and decides that the fraud must be clearly proved by such testimony as would be legal in a court of justice. In this it does not, nor did it intend to decide whether this proof may or may not all appear in the affidavit of the plaintiff alone. It must be proof of facts within the affiant's own knowledge, and not hearsay, as in that case, which would not be legal testimony, whether sworn to by the plaintiff or any one else. The point was not raised in that case, that the plaintiff's affidavit was not sufficient, of itself, to prove the fraud, nor was it supposed that any question of that kind could be made, or that any decision of that matter was necessary, the "act respecting imprisonment for debt in cases of fraud," approved April 15th, 1846, (*Nix. Dig.* 330, § 1,) being couched in the following plain and unmistakable words: "and establishing by the *oath or affirmation* of the *plaintiff*, or *some other person* or *persons*, to the satisfaction of such justice or commissioner, one or more of the following particulars," &c. In addition to which specific enactment, we now have also the general act, approved March 18th, 1859, (see *Pamph. Laws* 1859, *p.* 489,) allowing parties to be witnesses in their own favor in any suit or proceeding at law or in equity, since which enactment, to wit, on October 5th, 1859, the affidavits in this case were made. But there could be no room for doubt since the act, approved April 15th, 1846, that the plaintiff's oath or affirmation, alone, is sufficient, not only to prove the indebtedness, but also the fraud, thus making, by express enactment, the facts set forth in the plaintiff's oath or affirmation legal testimony, so far as the same are within his own knowledge, and not hearsay, or otherwise legally objectionable.

In the second place, the counsel for the defendants

proposes to show the impropriety of the order to hold to bail by counter affidavits; that the defendants were not indebted to the plaintiff; that there was no fraud on the part of the defendants; that the affiant, Roy, was a man of bad character for truth and veracity, &c. It is not the practice to admit counter affidavits in a case of this kind, and should not be, unless the object be to convert the court into an inquest or jury, and require them to determine upon the whole evidence involved in the trial of the cause. This course of proceeding would necessarily result in a trial of the merits or matters in dispute between the parties. If we allow the defendant to produce and read affidavits taken subsequent to the commencement of proceedings, we must allow the plaintiff the same privilege. We should soon find the files of the court encumbered with folio upon folio of testimony, out of place altogether, except before a jury. Indeed, would not the main question, in fact the only question involved in the motion to discharge, the sufficiency of the affidavits upon which the order was made, or, in other words, the sufficiency of the facts proved to warrant the order for a *capias ad respondendum*, soon be overlooked altogether, and become merged in the query—whether a sufficient state of facts can be made out whether there is really any indebtedness, any fraud, which are inquiries altogether aside from the issue made by the motion to discharge, which can be only upon the sufficiency or insufficiency of the proof before the judge or commissioner at the time of making the order. Further, if this were to be adopted as the practice, many a defendant would be held to bail, or continued under arrest or in imprisonment on the proof subsequently admitted, instead of that originally made and relied on.

In another case, argued at this very term on a similar motion, the plaintiff's counsel, doubting perhaps the sufficiency of his proof before the judge who made the order, insisted upon the propriety and right of the plain-

tiff to add other proof showing fraudulent transactions since
the service of the writ. Such a practice certainly, upon
the reason of things, never can prevail. It would obviously
be inconsistent with the remedy intended. You might,
with equal propriety, arrest the defendant first, and after-
wards inquire into the indebtedness and fraud.

Reason, however, need not be called in aid to deter-
mine the practice in this case. We have all the reason in
the matter summed up in a few brief words in the 83d
section of the practice act of 1855, (*Nix. Dig.* 647, *pl.*
203,)—"Whenever, in actions founded upon contract, ap-
plication shall be made to set aside the writ upon which
the defendant was arrested, or to discharge him from ar-
rest, the court or judge hearing the application shall *con-
sider and determine* the sufficiency in fact, as well as in
law, of *the proof upon which the order for issuing such writ
was founded.*" The words have a retrospective applica-
tion only, and the court or judge to whom the application
for discharge is made acts in an appellate capacity, being
authorized to *review* only—to determine upon the law and
facts already before the court, and not to take cognizance
of new matters transpiring since the arrest, nor to hear and
determine upon facts existing at the time of making the
order, but not at that time put in evidence; to determine
the legality and propriety of the order by the " proof upon
which the order for issuing such writ was founded," and
by that only. Nothing can be plainer, and more consist-
ent with the reason and propriety of the thing, than that
a judge or court, on a motion to quash or discharge, is lim-
ited and confined to a consideration of the proof only upon
which the order was granted; and this we hold to be the
law and practice.

Upon the third and last objection, that the affidavits
are insufficient in themselves, we think the defendants
can claim no discharge. The facts set forth clearly make
out a *prima facie* case of indebtedness, which is all that is
required by the act. On this point they set forth the false,

deceitful and fraudulent representations of defendants, that they were the owners of the furniture and personal property about the United States Hotel at Cape Island, of which they were the proprietors; that they were responsible men and men of means, beyond all this, previous to incurring the indebtedness; and that it was upon, and by means of those false and fraudulent representations of defendants; the plaintiff at the time believing them to be true, he was induced to incur the liability he did for their benefit, and advance for them the money he did. He afterwards ascertains that they are not the owners of the personal property and furniture about the house, and are men of no reliable means; that these misrepresentations and false assertions of theirs were made use of only for the purpose of cajoling and deceiving the plaintiff out of his own funds, and thus fraudulently incurring an indebtedness which they meant never to liquidate. In all the important and material statements of the plaintiff, he is sustained fully by the testimony of Roy. We think that the proof of fraud as well as of indebtedness is sufficient to warrant the order for the *capias*, and therefore the motion to discharge must be denied.